| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| GUILFORD COUNTY | 22 CVS 9119 |

FILED 2022 DEC 9 A 10:39 GUILFORD CO., C.S.C. BY ____

AARON WADDELL
ABREKA REGUES
ALBERT SIDNEY PALMER
ALISHA DOBSON
ANDREW ANDERSON
ANGEL PASINA
ANGELA DAVIS
ANITA JOHNSON
ANQUINETTA MAXWELL
ANTWAN MCCLAIN
ANTWON RICHARDSON
ASHLEIGH PATITO
ASHLEY ROGERS
ASHLEY THOMAS
BRANDI COBLE
CAROL YARD
CAROLYN LEE
CHARON BLUE
CHRISTOPHER CRABTREE
CHRISTOPHER MURPHY
COURTNEY POTEAT
CREOLA CROUCH
DAVID SWINEY
DEDDRICK HUNTER
DEDRIC PARKER
DELINDA MCCALLUM
DENNIS JOHNSON
DENNIS ROBINSON
DOMINQUE CLAWSON
DONEEZHA DAVIS
DONOVEN AUTRY
EBONEE DOUGLAS
ERICE BLYTHER
ETHEL BAKER
GRAYLAND MCRAE
GROVER TANNER
GWEN MEEKS
HERMAN GATLING
IMANI MITCHELL
IVORY JOYNER

**COMPLAINT**

JAMES PITTMAN
JANET OXENDINE
JARAN YOUNG
JAWAN CHARLEY
JAZMINE PHIFER
JEANNIE OXEDINE
JEFFREY DIXON
JEFFREY WOODS
JESSICA HARDY
JOSEPH HANSHAW
JOSEPH PETERSON, JR.
JUAN CARLTON
KATHY MCGLOTHAN
KEVIN ODOM
KEVIN SULLIVAN
KEYA GRAHAM
KIMBERLI GRIMES
LAKISHA BUTLER
LAQUANA MCGRANT
LASAUN WILLIAMS
LATASHA HOOD
LATOYA HAYES
LATOYA SULLIVAN
LAURA WINCHESTER
LENORA LING
LESHORNE ADKINS
LISA CLARKE BARBER
LORIA MASON
MARLIN HALL
MCKINLEY MATHIS
MEKIIELA BARNES
MEL JAMES
ORLANDO WATKINS
PECOLEL BOBBITT
PONCE JONES
PORTIA MARTINEZ
QUENTIN GRAHAM
RACHAEL LACY
RAHSHEDA BAKER
RANDOLPH HOWARD
REGINALD HAMILTON
RENEE BARDGE
ROSELLA SHERLOCK
RUBEN ROBINSON
SAJATA HENRY
SAMANTHA DAVIS

| | |
|---|---|
| SANUEL MOBLEY<br>SASHELLE MCCRAY<br>SEAN ASHE<br>SHARIE BOYD<br>SHAWNDELL CARPENTER<br>SHEILA TWITTY<br>SIDNEY PITTMAN<br>SOTONIO MOORE<br>STARASIA BROWN<br>TAMA UDOEMA<br>TARA WATKINS<br>TERRIS BRIM, SR.<br>THOMAS BLACKBURN<br>THOMAS MCCALLUM<br>THOMAS NAVA<br>TIMOTHY DILLARD<br>TIMOTHY WILLIAMS<br>TOMIKA FREEMAN<br>TOUSONT SIMMONS<br>VALERIE MCLENDON WALLS<br>VERE TONGE<br>VERNETTA DAVIS<br>VIVIAN DILLARD<br>WELDON TIMMONS<br>WILLIAM PHILLIPS, JR.<br>WILLIE WHITE,<br><br>        Plaintiffs,<br>v.<br><br>TITLEMAX OF VIRGINIA, INC., TMX FINANCE OF VIRGINIA, INC., TITLEMAX OF SOUTH CAROLINA, INC., TITLEMAX OF TENNESSEE, INC., TITLEMAX OF GEORGIA, INC.<br>        Defendants. | |

Plaintiffs, complaining of Defendants, and allege and state as follows:

1. Plaintiffs are or were each North Carolina residents who entered into one or more car title loan transaction(s) with one or more of the Defendants. At least one of the Plaintiffs are citizens and residents of Guilford County, North Carolina.

2. Defendants TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc, TMX Finance of Virginia, Inc. and TitleMax of Georgia, Inc., TitleMax of Tennessee, Inc. (collectively

"TitleMax") are related car title loan lenders. Defendants are foreign corporations that regularly transact business in North Carolina.

3. Defendants are foreign corporations organized and existing under the laws of a state other than North Carolina. At all times relevant to the events and transactions alleged herein, Defendants unlawfully engaged in the automobile title loan business in North Carolina. Defendants have not registered to do business in North Carolina with the Office of the Secretary of State of North Carolina despite the fact that they are doing business in North Carolina.

4. This Court has jurisdiction over Defendants pursuant to N.C.G.S. §1-75.4 in that at all times relevant to the events and transactions alleged herein, Defendants, via the internet, cellular telephone and/or other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of, and/or foreclosed upon automobile title loans with Plaintiffs and other North Carolina citizens in violation of the North Carolina Consumer Finance Act, N.C.G.S. §53-164, et seq. Plaintiffs further allege that, for a considerable amount of time prior to the events and transactions with Plaintiffs as alleged herein, Defendants had regular, ongoing, continuous and systematic contacts with the state of North Carolina and Guilford County and its citizens and has conducted business in this state in that Defendants via the Internet, cellular telephone and/or other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of and foreclosed upon automobile title loans with North Carolina citizens in violation of the North Carolina Consumer Finance Act, N.C.G.S. §53-164, et seq., such that this Court has personal jurisdiction over Defendants pursuant to N.C.G.S. §1-75.4.

5. Venue is appropriate in this county pursuant to NCGS 1-82 because, among other reasons, the Defendants do not reside in North Carolina and and at least one of the plaintiffs reside here in Guilford County. Also see *Wall v. AutoMoney,*, NC COA 21-419 (July 19, 2022), p.47

6. Defendants, at all times relevant hereto, were and remain in the business of making consumer car title loans to residents of North Carolina. This series of transactions and occurrences along with the common legal issue of sending the matters to individual arbitrations make Permissive Joinder proper pursuant to Rule 20 of the North Carolina Rules of Civil Procedure.

7. Many Plaintiffs do not have their contract documents for a number of reasons—including them being in the glove compartments of cars hauled away by TitleMax. TitleMax has only turned over documents after being ordered to do so by courts and arbitrators across the state and should be ordered to do so again by this Court.

8. TitleMax has regularly solicited customers in part in North Carolina and conducted other activities in part in North Carolina in violation of N.C. Gen Stat 53-190.

9. Courts and arbitrators have repeatedly held that TitleMax is violating the law. TitleMax literally thumbs its nose at our Courts—refusing at present to even pay outstanding Judgments against it by North Carolina consumers despite Court order that it do so.

10. TitleMax entered into North Carolina to take possession of motor vehicles.

11. TitleMax has registered to assert motor vehicle title liens with the North Carolina DMV and have thousands of active liens on North Carolina owned and titled motor vehicles.

12. North Carolina consumers conduct internet searches using the search terms "car title loans" or similar search terms, TitleMax out of state locations appear as prominent search results, which results were intended TitleMax.

13. TitleMax in earlier litigation testified under oath that it did not do radio advertisements into North Carolina. Now it admits under oath that it did.

14. TitleMax, in many cases, has business locations located just over the North Carolina state line for the purpose of entering into loan transactions with North Carolina residents in an effort to avoid the application of North Carolina law.

15. Each Plaintiff entered into one or title more loan transactions with Defendants.

16. At all times relevant hereto, Defendants knew or should have known that each Plaintiff was a North Carolina resident and held a North Carolina title on his or her vehicle.

17. TitleMax intentionally and regularly accepts payments from North Carolina consumers while those consumers are physically in the state of North Carolina by mail, telephone debit card payments, online payments by Western Union and by payment through the TitleMax smart phone application.

18. TitleMax, despite being told repeatedly its conduct is illegal, regularly and intentionally regularly accepts payments and converts cars from North Carolina consumers at a time when those consumers are physically in the state of North Carolina. TitleMax regularly and intentionally take actions and measures to enforce those loans in North Carolina, including conversion and sales of collateral automobiles owned by North Carolina consumers.

19. TitleMax secured said loans by a placing lien on each Plaintiff's vehicle through the North Carolina Department of Motor Vehicles.

20. The tortious conduct at issue is subject to North Carolina law.

**FIRST CLAIM FOR RELIEF**
**(Violations of the North Carolina Consumer Finance Act, N.C.G.S. §53-165, et seq. for underlying claims — All Defendants)**

21. Plaintiffs reallege the allegations contained above.

22. The annual interest rate that Defendants have charged each Plaintiff far exceeds the maximum annual rate of interest allowed by the North Carolina Consumer Finance Act, N.C.G.S. §53-176, on a consumer loan in the amount loaned by Defendants. N.C.G.S. §53-190 makes unenforceable any loan contracts made outside of the state of North Carolina in the amount of fifteen thousand dollars ($15,000.00) or less for which greater consideration or charges than those authorized by N.C.G.S. §53-173 and N.C.G.S. §53-176 have been charged, contracted for or received unless all of the contractual activities, including solicitation, discussion, negotiation,

offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside the state of North Carolina.

23. With regard to each Plaintiff, Defendants have engaged in one or more of the acts enumerated in N.C.G.S. §53-190(a) and is therefore subject to North Carolina law.

24. Defendants come into North Carolina to solicit or otherwise conduct activities in regard to its illegal loan contracts, and are therefore subject to North Carolina law pursuant to N.C.G.S. §53-190(b).

25. The acts and conduct of Defendants in soliciting Plaintiffs for the loans alleged herein, and charging them an annual interest rate in excess of the lawful maximum on that loan are clear violations of the North Carolina Consumer Finance Act that subject Defendants to penalties under N.C.G.S. §53-166(d), including without limitation that Defendants shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan.

26. Plaintiffs have been damaged by Defendants' violations of the North Carolina Consumer Finance Act alleged herein in an amount to be proven at trial, but which amount is at least the sum of $25,000.00.

## SECOND CLAIM FOR RELIEF
### (Violations of N.C.G.S. §24-1.1 et seq. — All Defendants) (claim in the alternative)

27. Plaintiffs reallege the allegations contained above.

28. The annual interest rate Defendants have charged each Plaintiff far exceeds the maximum annual rate of interest allowed by the North Carolina Consumer Finance Act, N.C.G.S. § 24-1.1, on a consumer loan in the amount loaned by Defendants.

29. The loans alleged herein are additionally governed by Chapter 24 of the North Carolina General Statutes pursuant to N.C. Gen. Stat. § 24-2.1. Among other reasons, Defendants engaged in solicitations and in many cases made an oral offer to lend that was received in part in North Carolina, Defendants received solicitations or communications from Plaintiffs that originated within North Carolina for Plaintiffs to borrow.

30. N.C. Gen. Stat. § 24-2.1 (g) provides: "It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws. Any provision of this section which acts to interfere in the attainment of that public policy shall be of no effect."

31. The acts and conducts of Defendants in soliciting Plaintiffs for the loans alleged herein, discussing and negotiating such loans, offering to make Plaintiffs such loans and receiving Plaintiffs' acceptance to its loan offer, all at a time while Plaintiffs were physically in the state of North Carolina, and then charging her an annual interest rate of more than 100% on that loan are clear violations of the North Carolina Consumer Finance Act that subject Defendants to penalties under N.C.G.S. §24-1.1, et seq..

32. In addition or in alternative to the penalties set forth in Chapter 53 and Chapter 75, Defendants are subject to the penalties set forth in N.C.G.S. §24-2, including without limitation,

repayment of twice the amount of interest paid on the unlawful loan, foregiveness of purported debt, and return of the title unencumbered title to Plaintiffs' vehicle.

33. Plaintiffs have been damaged by Defendants' violations of the North Carolina General Statutes Chapter 24 as alleged herein in an amount to be proven at trial, but which amount is at least the sum of $10,000.00 each.

## THIRD CLAIM FOR RELIEF
(Conversion)

34. Plaintiffs reallege the allegations contained above.

35. TitleMax regularly hires agent to come into North Carolina and take vehicles from North Carolinians – including many of these Plaintiffs.

36. TitleMax records its lien allegedly pursuant to illegal contracts which violate the North Carolina Consumer Finance Act.

37. Further many of the liens recorded—including for many of these Plaintiffs—violate N.C. Gen. Stat. 20-58 as they are not notarized properly as required by the Division of Motor Vehicles.

38. Despite their violation of law in failing to properly and legally record liens, TitleMax comes into North Carolina and converts the vehicles.

39. As a result, many of these Plaintiffs have been damaged in an amount of the fair market value of the vehicle at the time of the conversion.

## FOURTH CLAIM FOR RELIEF
(Violations of N.C.G.S. §75-1.1— All Defendants)

40. Plaintiffs reallege the allegations contained above.

41. The acts and conduct of Defendants alleged herein constitute acts and conduct in and affecting commerce and Defendants' intentional, knowing, and purposeful violations of the North Carolina Consumer Finance Act, including without limitation Defendants' failure to disclose that the loan was unlawful, constitute unfair and deceptive trade practices within the meaning of both N.C.G.S. § 53-180(g) and N.C.G.S. § 75-1.1 that are substantially injurious to consumers, including Plaintiffs.

42. The defendants directed, encouraged and necessitated one or more notaries to notarize documents outside the presence of the signer and then illegally used that notarized document to place liens on titles, enter the state and wrongly convert Plaintiffs' vehicles, and file Counterclaims in this action.

43. Plaintiffs have been damaged by the Defendants' violations of the North Carolina Consumer Finance Act an amount to be proven at trial, but which amount is at least the sum of $25,000.00.

44. The acts and omissions of Defendants alleged herein are part of a pattern and practice of Defendants violating North Carolina interest laws and the North Carolina Consumer Finance Act.

45. Plaintiffs are entitled to an award of treble damages pursuant to N.C.G.S. § 75-1.1.

46. Plaintiffs are entitled to recover his or her reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.

### FIFTH CLAIM FOR RELIEF
### (Punitive Damages — All Defendants)

47. Plaintiffs reallege the allegations contained above.

48. The acts of Defendants alleged herein constitute willful, wanton, and malicious conduct and cause intentional, purposeful, and unlawful detriment to Plaintiffs. Defendants conduct continues even after the North Carolina Court of Appeals have agreed with the Undersigned that these high interest loans are illegal.

49. Defendants are therefore liable to each Plaintiff for punitive damages in an amount to be proven at trial but which amount is at least the sum of $25,000.00.

### SIXTH CLAIM FOR RELIEF
### (Piercing the Corporate Veil)

50. Plaintiffs reincorporate the allegations above.

51. TMX Finance of Virginia, LLC and/or some other owner and/or entity exercise complete dominion and control over the other entity defendants.

52. TMX Finance of Virginia, LLC and/or some other owner and/or entity totally control the finances, policy and business practice so that the corporate entities had no mind, will or existence of their own.

53. For example, TMX Finance of Virginia, LLC and/or some other owner and/or entity directs, and even pays, employees of the other shell Defendants.

54. Defendants have excessively fragmented their title loan business into numerous entities. For example, all of the defendant entities do business as "TitleMax."

55. The finances of the defendants are commingled.

56. On prior occasions TMX Finance of Virginia, LLC and/or some other owner and/or entity has paid the legal obligations of the other corporate defendants.

57. Plaintiffs each have their own separate loan transactions with one or more of the defendants, and each are entitled to their own separate payment.

58. TMX Finance of Virginia, LLC and/or some other owner and/or entity exercised their dominion and control over the other Defendants.

59. When a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law should disregard the corporate formation.

60. Based upon the foregoing, TMX Finance of Virginia, LLC and/or some other owner and/or entity used the other Defendant entities as mere instrumentalities, and Plaintiffs are entitled to cover all damages alleged in this action from each of the defendant entities jointly and severally.

## **SEVENTH CLAIM FOR RELIEF**
### (Motion to Compel Arbitration — All Defendants)

61. Plaintiffs reallege the allegations contained above.

62. The loan agreements contain at issue an arbitration provision which cover all of the claims asserted herein.

63. Each Plaintiff prays unto the Court for any order staying this matter and referring their matter to arbitration pursuant to the American Arbitration Association rules.

WHEREFORE, Plaintiffs pray the Court for the following relief:

1. That each Plaintiff shall have and recover of Defendants all statutory damages incurred and recoverable pursuant to N.C.G.S. § 53-166(d) and other damages as provided by law;

2. That each Plaintiff shall have and recover of Defendants all statutory damages incurred and recoverable pursuant to N.C.G.S. Chapter 24 and other damages as provided by law;

3. That each Plaintiff have and recover of Defendants treble damages pursuant to N.C.G.S. § 75-1.1;

4. That each Plaintiff have and recover of Defendants punitive damages in an amount to be determined, but which amount is at least the sum of $10,000.00;

5. That each Plaintiff have and recover of Defendants interest and attorneys' fees as by law provided;

6. That the Court grant each Plaintiffs' motion to stay and refer this matter to individual arbitrations for each Plaintiff pursuant to the terms of the Agreement and the American Arbitration Association; and

7. For such other and further relief as the Court may deem just and proper.

This the 9th day of December 2022

*[Signature: Drew Brown]*

Drew Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 478-6000 (telephone)
drew@greensborolawcenter.com